## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**PATRICIA YOUNG**, on behalf of herself
and all others similarly situated,

        **Plaintiff,**

**v.**

**COMMUNITY   HEALTH   SYSTEMS,
INC.**

        **Defendant.**

_____/

**CASE NO.:  8:22-cv-00329**

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S UNOPPOSED MOTION TO FILE AMENDED CLASS ACTION COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff Patricia Young ("Plaintiff"), respectfully moves the Court to file a First Amended Class Action Complaint. In support, Plaintiff states:

### PROCEDURAL POSTURE AND WRITTEN CONSENT OF OPPOSITION

On December 30, 2021, Plaintiff filed a Class Action Complaint in the Fifth Judicial Circuit Court in Hernando County, Florida.  On February 8, 2022, Defendant Community Health Systems, Inc. ("CHS") filed a Notice of Removal [ECF No. 1] in this Court. On February 11, 2021, CHS filed its Answer [ECF No. 7] and a few days later, on February 14, 2022, filed its Motion for Judgment on the Pleadings [ECF No. 8]. Plaintiff's response to the Motion would have been due on March 7, 2022. The acceptance of this Amended Complaint designed to add in additional defendants and to correct deficiencies in the complaint will moot the prior pleadings. The opposing party gave written consent for the filing of this Amended Complaint.

## MEMORANDUM OF LAW

Rule 15 provides that "a party may amend its pleading [with] the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The opposing party has given Plaintiff written consent to file this Amended Complaint via email this afternoon. This standard reflects the "policy of the federal rules ... to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Andrews v. Radiancy, Inc.*, No. 6:16-cv-1061, 2017 WL 552873, at *2 (M.D. Fla. Feb. 10, 2017) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999)) ("There is a liberal policy favoring allowance of amendments to pleadings.")

In determining whether to grant or deny a motion to amend under Rule 15, the court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Dussouy*, 660 F.2d at 598; *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Not all of the factors merit equal weight; it is the consideration of prejudice to the opposing party that carries the greatest weight. *See In re Trafford Distrib. Ctr., Inc.*, 414 B.R. 858, 863 (Bankr. S.D. Fla. 2009) (undue prejudice to the opposing party "is the touchstone for the denial of an amendment"). Allowing Plaintiff to file the Amended Class Action Complaint would serve justice and promote judicial efficiency.

Through the Amended Class Action Complaint, Plaintiff seeks to add additional defendants— Defendant Hernando HMA, LLC d/b/a Bravera Health Brooksville f/k/a Bayfront Health Brooksville and John Does 1-5. Hernando HMA, LLC is the hospital where Plaintiff was treated and charged the "ER Visitation Fee" that is central to Plaintiff's claims. Plaintiff also seeks to add additional defendants John Does 1-5 who are entities whose identities are not presently known but are subsidiaries of Defendant Community Health Systems, Inc. and who have control of defendant Hernando HMA, LLC. Plaintiff also seeks to add allegations to correct any pleading deficiencies in the prior complaint. A copy of the First Amended Class Action Complaint is attached hereto as **Exhibit A**.

First, the filing of the Amended Complaint will not unduly prejudice Defendant CHS who consented in writing to the filing of this Amended Complaint. The additional factual allegations and the addition of new defendants arise out of the same events as set forth in Plaintiff's current Class Action Complaint. As such, CHS will not suffer any prejudice where the earlier pleadings provided adequate notice of the conduct of at issue. *See Dussouy*, 660 F.2d at 599 (defendant cannot claim prejudice when prior pleadings provide adequate notice of the transaction at issue and the challenged conduct).[1] The Amended Class Action Complaint will not delay discovery or the ultimate resolution of this case because the amended pleading is not based on

---

[1] Cases decided by the Fifth Circuit before the close of business on September 30, 1981 are binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

new or unrelated conduct. No discovery has been sought in this case and no scheduling order has yet been entered. Moreover, adding the proposed defendants would not be unduly prejudicial, but convenient for the parties and result in judicial efficiency. Adding the proposed defendants to his action would render unnecessary the filing of multiple lawsuits and promotes efficiency.

Next, Plaintiff's motion is timely. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("The lengthy nature of litigation, without any other evidence of prejudice to the Defendants or bad faith on the part of the Plaintiffs, does not justify denying the Plaintiffs the opportunity to amend their complaint."). Plaintiff's motion seeks to amend the Class Action Complaint only 2 short months after the original filing of the complaint and prior to any substantive discovery or rulings on any substantive motions. Granting Plaintiff's motion to amend prior to completion of briefing and a ruling on the Motion for Judgment on the Pleadings would conserve judicial resources. Moreover, there is currently no deadline imposed by the Court to amend the pleadings. Thus, Plaintiff's motion to amend is timely.

Finally, Plaintiff's motion to amend is not brought in bad faith or with dilatory motive. This is Plaintiff's first request for an amendment and the opportunity for Plaintiff to present to the Court the most meritable allegations against defendants. *See Gropp v. United Airlines*, 847 F. Supp. 941, 946 (M.D. Fla. 1994) (granting motion to amend complaint and finding no bad faith where it was plaintiff's first amended complaint and noting that "Plaintiffs have the right to amend in an attempt to present to the Court their most meritable claim."). Plaintiff's motion is not filed for any

dilatory purpose, but only to clarify the claims asserted therein and to add additional defendants.

Accordingly, Plaintiff's request to file the First Amended Class Action Complaint should be granted as it would not cause undue prejudice to CHS, CHS is not opposed to this filing, it is timely filed, it is Plaintiff's first request for an amendment, and Plaintiff's motive to amend is in good faith.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff to file the First Amended Class Action Complaint, and grant such other and further relief as the Court deems just and proper.

## **Local Rule 3.01(g) Confirmation**

Pursuant to Local Rule 3.01(g), counsel for Plaintiff conferred with counsel for Defendant on March 3rd to 7th, 2022 via email. Counsel for Defendant informed that he does not object to the filing of this motion.

Respectfully submitted this 7th day of March, 2022.

**VARNELL & WARWICK, P.A.**

/s/Janet R. Varnell
Janet R. Varnell (FBN 0071072)
Brian W. Warwick (FBN 0605573)
Matthew T. Peterson (FBN 1020720)
Erika R. Willis (FBN 100021)
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*mpeterson@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
Janet R. Varnell

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**PATRICIA YOUNG, on behalf of herself**
**and all others similarly situated,**

**Plaintiff,**

**v.**

**COMMUNITY HEALTH SYSTEMS,**
**INC., HERNANDO HMA, LLC D/B/A**
**BRAVERA HEALTH BROOKSVILLE,**
**and JOHN DOES 1-5,**
            **Defendants.**

_____/

**CASE NO.: 8:22-cv-00329**

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Patricia Young on behalf of herself and all others similarly situated brings this First Amended Class Action Complaint against Defendants Community Health Systems, Inc. ("CHS") which owns and operates eleven hospitals in Florida and many other states, including Defendant Hernando HMA, LLC d/b/a Bravera Health Brooksville f/k/a Bayfront Health Brooksville ("Hospital"), and Defendants John Does 1-5, representing various entities who are involved in the control of the Hospital ("John Does") (CHS, together with Hospital and John Does, "Defendants") and states:

## I.    INTRODUCTION

1.    Plaintiff was in a bicycle accident and visited the Hospital for evaluation and treatment. The Hospital charged her a substantial, undisclosed "ER Visitation Fee". This ER Visitation Fee is not charged for any specific service or treatment by the

provider and is billed separately and in addition to charges for treatment and services actually rendered. Critically, the charge is concealed from all patients presenting for treatment at the Hospital's Emergency Room until after services have been rendered, and there is no contractual authorization or agreement for the ER patient to pay the ER Visitation Fee contained in Hospital's form, Emergency Room Contract. In fact, the ER Visitation Fee is not listed anywhere on the Hospital's Emergency Room Contract.

2.      Although the Hospital intends to impose its ER Visitation Charge on all ER patients, the fee is not mentioned, disclosed or agreed upon in the Hospital's standard Consent for Service Agreement ("Contract"), which ER patients are routinely provided, and which contains a financial responsibility provision covering the payment of a patient's account.

3.      Significantly, the Hospital's form Contract contains no agreement or promise on behalf of a patient to pay a separate ER Visitation Fee, and Defendants have no legal right to assess an ER Visitation Fee that is not included in its Contract. Further, the ER Visitation Fee is not described or mentioned on the Hospital's website, on any signage posted in the ER, or as part of the patient registration process. Disclosure of the existence, purpose and magnitude of this unmentioned and unagreed upon Visitation Charge, if disclosed to a patient prior to its being incurred, would be a material factor in a patient's decision to proceed with treatment and care at the Hospital's emergency care facilities, or seek less costly treatment elsewhere, such as a doctor's office or urgent care center.

2

4.      Despite (1) failing to describe, mention or reasonably disclose its intention to assess a separate ER Visitation Fee for the patient's ER visit, and (2) despite the lack of any contractual agreement or promise to pay for such Fee within Defendants' form Contracts or otherwise, Defendants' practice is to systematically add an ER Visitation Fee to all ER patient's billed charges.  As a result of such practice, ER patients end up completely surprised by a substantial charge added to their ER bill that they were not expecting and did not agree to pay.

5.      Defendants' ER Visitation Fee is billed to all of the Hospital's ER patients separately from and in addition to the charges for individual items of treatment and services provided to patients during their examination and care, such as x-rays, lab work, surgical procedures, drugs, etc.  These ER Visitation Fees are not related to medical services but are reportedly designed to defray and offset a bundle of overhead, operational, and administrative expenses incurred by Hospital in operating its ER. Such Fees typically come as a complete surprise to the few unsuspecting ER patients who, after incurring such Fees, are able to flush out their true nature and purpose through persistence and determination.

6.      The Centers for Medicare and Medicaid (CMS) now require by regulation that all U.S. hospitals create what is called a "Chargemaster" document which includes all items of service and display shoppable services in a consumer-friendly format. Although Plaintiff is not attempting to pursue a claim based upon the failure to properly set forth the ER Visitation fee in this case, it is telling that the Hospital was found to be noncompliant and was sent a warning letter earlier this year.

Its Chargemaster was found noncompliant because the standard charges list only lists major payors and some specific plans, but does not clearly associate both payor and plan with each negotiated rate for each item/service. Notably, in response to the notice of noncompliance, the Hospital pointed to its "price estimator tool" which is buried on its website and which does not disclose its ER Visitation Fee in any way. Rather than actually complying with the regulation by displaying its "shoppable services in a consumer-friendly format" and notifying consumers of its ER Visitation Fee.

7.     The choice as to how a patient wishes to proceed with his or her medical care should be up to the patient, and made with full knowledge of the ER Visitation Fee. This type of Fee is one of the reasons why Florida is the most expensive state in the nation for the most common type of ER visit.[1]

8.     By this Complaint, Plaintiff seeks declaratory and injunctive relief, including a declaration that Plaintiff is not required to pay the ER Visitation Fee, restitution and the reduction of account balances attributable to the undisclosed ER Visitation Fee.

9.     The duty to provide reasonable notice of Defendants' ER Visitation Fee exists (1) under well-established Florida Common Law which sets for standards as to

---

[1] According to a study last year of nearly 4,500 hospitals across the country to gauge the price of the most common ER visit, Florida charges an average of $3,102 to patients before insurance, the highest of any state. Florida also had 40 of 100 hospitals with the highest charges relative to their costs and charges more than 4 times the actual cost of care. Fleecing Patients: Hospitals Charge Patients More than Four Times the Cost of Care, National Nurses United, November 2020.

when a "duty to disclose" arises, (2) under FDUPTA because the failure to disclose such charges constitutes an "omission" which is an unfair, deceptive, and unconscionable billing practice, and/or (3) under Fla. Stat. § 395.301 and the concomitant rules and regulations governing Price Transparency and Patient Billing.

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and, upon information and belief, at least one Class member is a citizen of a state other than either Defendants' state of citizenship.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants conduct business in this District and are therefore subject to personal jurisdiction.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Hospital's principal place of business is located in this District and is therefore deemed to reside in this District for the purposes of venue and subject to personal jurisdiction.

## III.    PARTIES

13.    Plaintiff Patricia Young is a resident of Hernando County, Florida who was treated at Defendants' ER facilities in Brooksville, Florida, and who was billed a surprise ER Visitation Fee of $3,922.68 in addition to her very substantial bill for all services and products allegedly rendered and provided during that ER visit.

5

14.    Defendant CHS is a Delaware corporation headquartered in Tennessee, and is "one of the largest publicly-traded providers of healthcare services in the United States and a leading operator of general acute care hospitals and outpatient facilities in communities across the country. We provide healthcare services through the hospitals and outpatient facilities that we own and operate in generally larger non-urban markets and selected urban markets throughout the United States. As of December 31, 2021, we owned or leased 83 hospitals with an aggregate of approximately 13,289 licensed beds, comprised of 81 general acute care hospitals and two stand-alone rehabilitation or psychiatric hospitals."[2] CHS is the Parent Company who owns or operates hospitals through distinct and indirect subsidiaries of CHS who are alleged as John Doe entities 1-5 in this Amended Complaint. Within the State of Florida, such hospitals include: (i) Bravera Health Seven Rivers in Crystal River, FL, (ii) North Okaloosa Medical Center in Crestview, FL, (iii) Santa Rosa Medical Center in Milton, FL, (iv) ShorePoint Health Port Charlotte in Port Charlotte, FL, (v) Bravera Health Spring Hill in Spring Hill, FL, (vi) Physicians Regional Healthcare System Collier in Naples, Florida, (vii) ShorePoint Health Venice in Venice, FL, (viii) ShorePoint Health Punta Gorda in Punta Gorda, FL, (ix) Lower Keys Medical Centers in Key West, FL, (x) Physicians Regional Healthcare Systems Pine Ridge in Naples, FL, and (xi) Defendant Bravera Health Brooksville in Brooksville, FL (formerly known as Bayfront Health – Brooksville).[3]

---

[2] Community Health Systems, Inc. Form 10-K Annual Report
[3] https://www.chs.net/serving-communities/locations/#FL

15.    Upon information and belief, CHS exercises the right to controls management and operations, including the pricing policies, to be utilized by its Florida Hospital locations.  Through its subsidiaries, it issues guidelines requiring the hospitals s to make public a list of standard charges; issues corporate policies regarding pricing, and it transacts and does business in the State of Florida.  CHS's activities in the State of Florida with regard to all of the Florida hospitals that CHS and/or its subsidiaries own, operate, or lease are not standard parent-subsidiary interactions but, instead, reflect daily, operational control over the particular conduct challenged in this case. Thus, CHS and its subsidiaries are alter-egos of Defendant Bravera Health Brooksville and other CHS Florida Hospital locations with regard to pricing and billing.

16.    CHS specifically recognized in its 10-K report to the Securities and Exchange Commission that health reform initiatives including federal and state price transparency requirements would impact its prices, its competitive position and its relationships with patients such as plaintiff and the proposed Class.  In its public filings, CHS acknowledged that "health reform efforts" at the federal and state level including those aimed at "price transparency" may impact prices and the relationships between hospitals, insurers and patients.  This is evidence of CHS's ability to control its subsidiaries and its involvement regarding price transparency with consumers who are treated at the hospitals in Florida that it or its subsidiaries own, operate and/or lease.

17.    Defendant Bravera Health Brooksville is a hospital located in Brooksville, Florida which is owned, leased and/or operated by CHS or its

7

subsidiaries. Upon information and belief, CHS leased Defendant Bravera Health Brooksville on or about January 2014. Bravera Health Brooksville acts as an agent for the principal CHS and/or its subsidiaries with regard to customer pricing. CHS either directly or through its subsidiaries or affiliates who can be identified from limited discovery, exercise an unusually high degree of control over Bravera Health Brooksville and the other hospitals that they control in the State of Florida with regard to pricing of services and billing.

18.    Defendants John Does 1-5 are entities whose identities are not presently known and, therefore, Plaintiff sues such Defendants by fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained through discovery. Upon information and belief, Defendants John Does 1-5 are entities involved in the management, ownership, operation and control of the Hospital as well as the Hospitals they control in the State of Florida.

## IV.    FACTUAL ALLEGATIONS

19.    Upon information and belief, Defendants used a form Contract for its ER patients during the class period drafted by Defendants, whose terms were not dictated by statute or otherwise, and which all ER patients (or their agents) execute.

20.    This Contract governs the relationship between the Defendants and the patient but it fails to inform the Plaintiff of Defendants' intent to add a separate ER Visitation Fee over and above the cost of the medical services provided. Additionally, the ER Visitation Fee was not disclosed on signage posted in or around the Hospital's

emergency room facilities during the class period, or on Defendants' website, or as part of Hospital's normal registration process.

21.     Instead of providing notice of its ER Visitation Fee by posting signage in the ER facilities, describing the Fee in its Contracts, describing the Fee on its website, or by explaining the Fee to prospective patients during the registration process, Defendants' practice is to intentionally conceal its ER Visitation Fee from patients until after services have been rendered.

22.     At all relevant times, Defendants' charged ER patients this hidden and undisclosed ER Visitation Fee, which Defendants set at one of five levels (determined after discharge), based on an internally developed formula known exclusively to Defendants.  Upon information and belief, Defendants' ER Visitation Fees for 2020 ranged from $951 up to $6,025.  Plaintiff was charged an ER Visitation Fee of $3,922.68, despite the fact that such Fee was never described, explained, mentioned, or agreed to in the Contract she signed, and was not disclosed on any signage posted in the ER facility she visited, verbally during her ER registration process, or on Defendants' website.

23.     This substantial ER Visitation Fee is unlike the individual billable items of medical treatment or care actually provided to an individual patient, such as X-rays, laboratory services, sterile supplies, drugs, or any of the other numerous items or procedures which are separately charged.  Rather, the ER Visitation Fee has no description or purpose.  Regardless of its label, however, this ER Visitation Fee is uniformly assessed for presenting and being seen at Defendants' emergency

department, and is reportedly meant to defray the overhead, operational, and administrative expenses incurred in operating an ER facility. Further, the formula or algorithm used after discharge to determine the level of the ER Visitation Fee is not disclosed to patients, making it virtually impossible for patients to control the amount of the ER Visitation Fee they will be charged.

24.     On or about February 18, 2019, Plaintiff received emergency treatment/services at Bayfront Health Brooksville's emergency department, where she was provided with and signed the form ER Contract.  While there, Plaintiff received no notice or warning, either in Defendants' Contract, in posted signage in the ER, or verbally at the time of registration, as to the substantial ER Visitation Fee that Defendants intended to add to Plaintiff's account on top of the individual charges for items of treatment and services provided to Plaintiff.  Plaintiff did not know of such charge, and did not agree or promise to pay such Fee.

25.     Plaintiff was not provided a copy of the Contract she signed.  Upon information and belief, it is Defendants' regular practice to not provide a copy of the signed Contract to ER patients upon discharge.

26.     Defendants subsequently assessed "Total Charges" of $7,543.64 for Plaintiff's visit.  The Total Charges included an ER Visitation Fee of $3,922.68 (52% of total invoice), which was never mentioned or agreed upon within the Contract Plaintiff signed, was not directly related to the medical services provided, and was effectively hidden from Plaintiff in each of the following ways:

a)   Defendants' website fails to mention or disclose their intent to impose a separate ER Visitation Fee;

b)   the ER Visitation Fee was not disclosed on any signage posted in the ER;

c)   the ER Visitation Fee was not disclosed to Plaintiff during the patient registration process; and

d)   The ER Contract did not describe or mention the ER Visitation Fee or contain any promise or agreement for Plaintiff to pay a separate ER Visitation Fee.

27.   Plaintiff was shocked, dismayed and aggrieved when she found out that she had been charged this substantial, undisclosed ER Visitation Fee of $3,922.68 that she had never heard of, much less agreed to pay.  Had Plaintiff been informed of the ER Visitation Fee prior to being seen in the ER, she would have left the Hospital and sought less expensive treatment elsewhere or even self-treated.

28.   Subsequently, Plaintiff's account was given a discount and the account sent to Paragon Revenue Group for Collections.  The non-payment of this ER Visitation Fee has caused harm to Plaintiff's credit and she is aggrieved in that the Defendants and their debt collector continuously attempted to collect this debt from her. Although Defendant CHS stated in papers filed in this case that the debt was now "discharged", Plaintiff has no guarantee that this debt will not be sold to third party debt buyers or that Defendants will not chose to pursue this debt in the future.

Furthermore, Plaintiff was damaged in that she suffered emotional distress and incurred costs associated with the hiring of counsel to bring this litigation.

## V.   CLASS ACTION ALLEGATIONS

29.   Plaintiff brings this action on behalf of herself and a class of all other persons similarly situated, defined as ("the Class"):

> All individuals or their responsible party who (1) were assessed an ER Visitation Fee by Defendants at any of its Florida locations; and (2) signed Defendant's form contract; and (3) who made any payment and/or have a remaining account balance for their visit.

30.   Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors or assigns of Defendants and any judicial officer assigned to this matter and their immediate family.

31.   The Class period begins 5 years prior to the filing of the Class Action Complaint [ECF No. 1] and continues through the date that notice is issued to the Class.

32.   Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

33.   This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation, and superiority requirements.   Plaintiff seeks to represent an ascertainable Class having a well-defined community of interest in the questions of

law and fact involved in this matter as all Class members have been charged the same ER Visitation Fee.

34.   The members of the Class are so numerous that joinder of all members of the Class is impractical.  Plaintiff is informed and believes, and thereon alleges, that the Class consists of at least thousands of persons.

35.   Defendants have acted or refused to act on grounds generally applicable to Class members and has engaged in a systemwide policy of adding a substantial ER Visitation Fee to the charges billed for an ER visit without any contractual agreement regarding such Fee, and without providing any advance notice or warning to prospective ER patients of their intent to add such a Fee in any signage posted in the ER, verbally during the patient registration process, on Defendants' website, or in the Contract patients are given to sign.  Such notice is required under price transparency guidelines, basic contract principles, under Florida Common Law, under FDUPTA, and under Fla. Stat. § 395.301(1), thereby making final declaratory and injunctive relief concerning the Class as a whole, including restitution of all amounts paid that are attributable to the ER Visitation Fees and the reduction of any outstanding balances that are attributable to the ER Visitation Fees, appropriate.

36.   The claims of Plaintiff are typical of the claims of the Class, and Plaintiff is a member of the Class as defined. Plaintiff shares the same interests as do all Class members because each of Plaintiff's claims is typical of those of other Class members.

37.   Plaintiff will fairly and adequately represent and protect the interests of the Class.

13

38.     Plaintiff has retained competent class counsel who are experienced in consumer protection and class action litigation and who will fairly and adequately protect the interests of the Class members.

39.     There are questions of law and fact common to the Class including, but not limited to:

(a)     Whether the Contract used by Defendants during the class period contains a contractual agreement or promise by ER patients to pay an ER Visitation Fee;

(b)     Whether Defendants' ER patients had the right to be informed about the ER Visitation Fees before incurring such a Fee;

(c)     Whether Defendants had a duty to disclose to prospective ER patients its policy of imposing an ER Visitation Fee in addition to the charges for the specific items of treatment and medical services provided;

(d)     Whether Defendants had a policy and practice of concealing from emergency care patients the existence and amounts of its ER Visitation Fees and how the Fee level would be determined;

(e)     Whether Defendants reasonably disclosed its intention to charge an ER Visitation Fee in its form Contracts, on signage posted in the ER facilities, during the patient registration process, and/or on its website;

14

(f)     Whether Defendants' acts and omissions complained of constitute a deceptive act, practice or misrepresentation under Florida law; and/or;

(g)     Whether Hospital's conduct in over billing patients, as alleged herein, constitutes a Breach of Contract;

(h)     Whether Defendants' acts and omissions complained of constitute a deceptive act, practice or misrepresentation under Florida law; and/or

(i)     What the rights and obligations of the parties are with regard to payment of the ER Visitation Fee.

40.     The prosecution of separate claims or defenses by or against individual members of the Class would create a risk of either inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the Defendants.

41.     Adjudications concerning individual members of the class which will, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests.

42.     Defendants have acted or refused to act on grounds generally applicable to all the members of the Class and has engaged in a systemwide policy of charging emergency care patients a substantial undisclosed and unagreed upon ER Visitation Fee, thereby making appropriate declaratory and injunctive relief for the class as a

15

whole, including restitution of amounts paid and cancellation of amounts owing that are attributable to the ER Visitation Fee.

43.     The common questions predominate over any individual issues that might exist.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all Class members is impractical and it would be virtually impossible for Class members to efficiently redress their wrongs individually.  Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments, and magnify the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as economies of scale and expense.

### FIRST CAUSE OF ACTION
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**(All Defendants)**

45.     Plaintiff herein repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 44, inclusive, with the same force and effect as though the same were set forth at length herein.

46.     Defendants intentionally failed to notify or advise Plaintiff and Class Members of the intention to charge a substantial ER Visitation Fee in advance of treatment, and its surprise billing of the ER Visitation Fees that were not described,

mentioned, or agreed upon in the ER Contract, constitutes unfair and/or is a deceptive act or practice within the meaning of FDUTPA, which prohibits unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.  Such conduct violates Fla. Stat. § 501.201 through §501.213, inclusive, Fla. Stat. §395.301(1) (Price Transparency Statute), and Florida common law.  Defendants' unfair and deceptive practices as described herein would mislead a typical ER patient who would not expect to be charged a substantial ER Visitation Fee without any prior notice of such Fee or a contractual agreement to pay it.

47.    A patient should have the right to decide for herself, based on basic contract principles as well as doctrines of "price transparency" and "informed consent," whether to go to or to remain at Defendants' ER facility and incur a substantial ER Visitation Fee or seek alternate and less costly treatment elsewhere. This is the essence of "price transparency" and "informed consent," as specifically required under the Price Transparency Statute, Fla. Stat. § 395.301(1).

48.    The billing of undisclosed ER Visitation Fees by Defendants was and continues to be, an unfair and deceptive business practice because Defendants intentionally omit disclosure or warning that a substantial ER Visitation Fee will be charged for the patient's emergency room visit; knowledge of a substantial ER Visitation Fee would be material to a prospective patient's decision to seek or continue to pursue treatment at its facility; and there is no agreement to pay such a Fee.

49.    Defendants' conduct described above constitutes unfair, deceptive, and/or unconscionable trade practices in violation of Florida's Deceptive and Unfair

17

Trade Practices Act ("FDUTPA") as provided by §§ 501.201-.213, Florida Statutes, including violations of:

(a)    The standards or unfairness and deception set forth and interpreted by the Federal Trade Commission or by the federal courts, as set forth in FDUTPA, §§ 501.203(3)(b) and 501.204; and/or

(b)    Law against unfair and deceptive trade practices set forth in 15 U.S.C. §§ 45(a)(1) and incorporated into FDUTPA, §§ 501.203(3)(c) and 501.204.

50.    The failure to disclose material information is deception by omission within the meaning of FDUTPA, and such deception has occurred here, as demonstrated by Defendants' failure to disclose its ER Visitation Fees in signage posted in Defendants' ER facilities, in the ER form Contracts, verbally during the patient registration processes, or on Defendants' website.

51.    Defendants' conduct, as described above, is also an "unfair" business practice that is immoral, unethical, oppressive, and unscrupulous as it hides from the consumer a substantial Fee that they later expect the patient to pay.

52.    As a result of Defendants' unfair and deceptive conduct alleged herein, Plaintiff and class members have been aggrieved and harmed by (1) Defendants' failure to disclose their ER Visitation Fees in advance of treatment; (2) its billing of ER Visitation Fees which are not agreed upon for payment by patients within the adhesive ER Contracts; and (3) its ongoing billing and collection practices to collect ER Visitation Fees that were not bargained for. Therefore, Plaintiff and class members

18

are entitled to declaratory and injunctive relief to prevent such practices pursuant to §

501.211(1) of FDUTPA, which provides:

> Without regard to any other remedy or relief to which a person is
> entitled, anyone aggrieved by a violation of this part may bring an
> action to obtain a declaratory judgment that an act or practice
> violates this part and to enjoin a person who has violated, is
> violating, or is otherwise likely to violate this part.

53.    As a direct and proximate result of Defendants' unfair and deceptive

business practices, Plaintiff is aggrieved by the assessment of an ER Visitation Fee for

which Defendant seeks to hold her responsible, and members of the class have likewise

aggrieved and/or incurred damages by making payments or owing balances

attributable to ER Visitation Fees.

54.    Plaintiff and members of the Class are entitled to a declaration that

Defendants' practice of charging a substantial, undisclosed ER Visitation Fee

constitutes an unfair and deceptive practice under FDUTPA.

55.    Plaintiff and members of the Class are also entitled to equitable relief,

including restitution of amounts paid for the ER Visitation Fees; and the cessation of

collection activity for outstanding account balances which include an ER Visitation

Fee.

**SECOND CAUSE OF ACTION**
**Federal Declaratory Judgment Act 28 U.S.C.A. § 2201**
**(All Defendants)**

56.    Plaintiff herein repeats, reiterates, and realleges each and every allegation

contained in paragraphs 1 through 44 above, with the same force and effect as though

the same were set forth at length herein.

57.    An actual controversy exists between Plaintiff and Defendants relating to their respective legal rights and duties under the Contract that requires judicial interpretation.  Plaintiff contends that, under the ER Contract, she is not required to pay Defendants' undisclosed ER Visitation Fee.  In contrast, Defendants charged this ER Visitation Fee to Plaintiff and members of the Class and either collected or attempted to collect the Fee from the Class.  Plaintiff is informed and believes and thereon alleges that Defendants further claim they have no obligation or duty to disclose its ER Visitation Fee to ER patients, whereas Plaintiff asserts just the opposite. In order to settle these disputes, Plaintiff and members of the Class are entitled to appropriate declarations under the Federal Declaratory Judgment Act, which is remedial in nature and should be liberally construed, as to the proper construction of the ER Contract and obligations of the parties thereunder, including whether or not Defendants have  an obligation or duty to disclose its intent to charge an ER Visitation Fee to all ER patients over and above the cost of the medical services provided.

58.    Plaintiff and members of the Class are entitled to a further declaration that Defendants' practice of charging a substantial, undisclosed ER Visitation Fee, in addition to the charges for the specific medical services and treatments provided, was not authorized or agreed to under the ER Contract.

59.    Plaintiff and members of the Class are also entitled to equitable relief, including (1) restitution of those portions of the amounts which they have paid which are attributable to ER Visitation Fees; and (2) the cessation of collection accounts for outstanding account balances which include all or part of an ER Visitation Fee.

60.    Plaintiff and members of the Class are entitled to the above declarations because (1) the ER form Contract provides no agreement or promise on behalf of an ER patient to pay an ER Visitation Fee on top of the individual charges for medical services and treatments rendered; (2) Defendants' ER Visitation Fees are substantial and material; and (3) Defendants' ER Visitation Fees are not disclosed to patients before treatment is rendered;

61.    Plaintiff and the members of the Class are also entitled to declaratory and injunctive relief prohibiting Defendants from continuing to pursue existing collection activity and credit reporting of outstanding account balances based on its undisclosed and unagreed upon ER Visitation Fees.

62.    The declarations sought above are necessary and appropriate since Plaintiff and the Class have been and continue to be impacted financially by Defendants' undisclosed ER Visitation Fees.  By granting the declaratory and injunctive relief sought herein by Plaintiff and the Class, this Court will clarify and resolve an ongoing and continuing dispute as to the rights and duties of the parties with regard to Defendants' ER Visitation Fees and billing practices.

63.    Finally, the declarations sought herein would benefit future emergency care patients and the public in general by bringing about increased pricing transparency and informed consent.

## THIRD CAUSE OF ACTION
**Breach of Contract**

64.     Plaintiff herein repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 44 above, with the same force and effect as though the same were set forth at length herein.

65.     On or about February 18, 2019, Plaintiff signed Defendant's form Contract which governs the provision of medical care and treatment to Plaintiff and members of the Class at the Defendants' hospitals located in Florida at their emergency departments, and grants permission to Defendants to bill for the medical services rendered to patients during their ER visit.  However, the Contract limits a patient's financial responsibility to services rendered to the patient, and does not include an ER Visitation Fee which is not a medical treatment or service which basically covers overhead, administrative, and operational expenses.  Indeed, nothing in the Contract authorizes Defendant to charge and collect payment for an ER Visitation Fee.  General overhead, operational, and administrative expenses, such as those which are incurred by virtually all business enterprises, are not "services and treatment" rendered to a patient in connection with medical treatment, and there is no promise or agreement in the Contract to pay any charge designed to cover Defendant's general overhead, operational, and administrative expenses.

66.     Despite the lack of any contractual agreement or promise to pay an ER Visitation Fee, the Hospital charged Plaintiff an unexpected and unauthorized ER Visitation Fee of $3,922.68.  This charge was not for medical treatment or services

22

provided to Plaintiff during her ER visit.  Rather, the ER Visitation Fee was added to Plaintiff's billed medical charges in violation of the terms of Defendant's Contract with Plaintiff.  Defendants have added similar ER Visitation Fees to the billed charges for other class members as well.  Defendants' common practice of over-billing through illegitimate charges constitute an act inconsistent with the Contract terms and constitutes a material breach of the terms of Defendant's Contract with Plaintiff and members of the class.

67.    Plaintiff has suffered damages as a result of Defendant's breach of its Contract with Plaintiff in the form of cash payments and/or balances owed which are attributable to the improperly charged ER Visitation Fee, including the accumulation of debt for this Fee.  Plaintiff's account is subject to collection action thereby resulting in additional harm to Plaintiff including, but not limited to, harm to her good credit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief against Defendants:

A.    On all causes of action, for an order that this case should be certified as a class action, and appointing Plaintiff as the class representative and her counsel as Class Counsel;

B.    On all causes of action, for a declaration or declarations as prayed herein;

C.    On all causes of action, for injunctive relief to enjoin Defendants from continuing to impose unlawful undisclosed ER Visitation Fees;

D.    On all causes of action, for restitution as alleged herein;

E.     On all causes of action, for an order awarding Plaintiff the costs of her suit, including but not limited to attorneys' and experts' fees; and

F.     For such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 7, 2022                    **VARNELL & WARWICK, P.A.**

/s/ Janet R. Varnell
Janet R. Varnell (FBN 0071072)
Brian W. Warwick (FBN 0605573)
Matthew T. Peterson (FBN 1020720)
Erika R. Willis (FBN 100021)
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
Telephone:  (352) 753-8600
Facsimile:  (352) 504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*mpeterson@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
Janet R. Varnell