# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PATRICIA YOUNG,

       Plaintiff,

v.                                                    CASE NO.: 8:22-cv-329-SCB-AEP

COMMUNITY HEALTH SYSTEMS,
INC., CHS/COMMUNITY HEALTH
SYSTEMS, INC. CHSPC, LLC,
HERNANDO HMA, LLC d/b/a
BRAVERA HEALTH BROOKSVILLE,
and JOHN DOES 1-5,

       Defendants.

_____/

# **O R D E R**

**THIS CAUSE** comes before the Court on the following Motions:

- Defendant Hernando HMA, LLC d/b/a Bravera Health Brooksville's ("the Hospital") Motion to Dismiss (Doc. 44);

- Defendant CHS/Community Health Systems, Inc.'s ("CHS/CHSI") Motion to Dismiss (Doc. 46); and

- Defendant CHSPC, LLC's ("PSC") Motion to Dismiss (Doc. 47).

Defendants CHS/CHSI and PSC's Motions adopt and incorporate the Motion filed by the Hospital and all arguments contained therein. Plaintiff, Patricia Young, filed

an Omnibus Response in Opposition to all three Motions. (Doc. 61). For the reasons that follow, Defendants' Motions are due to be granted.

## I.  BACKGROUND AND STATEMENT OF FACTS

Plaintiff's Second Amended Class Action Complaint ("the Complaint") alleges three causes of action against the Hospital, CHS/CHSI, and PSC, as well as a fourth Defendant, Community Health Systems, Inc., on behalf of Plaintiff and all others similarly situated for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.201, *et seq.*, Florida Statutes (Count I); declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (Count II); and breach of contract (against the Hospital only) ("Count III").[1]

Plaintiff, a resident of Hernando County, Florida, alleges she was in a bicycle accident and visited the emergency room ("ER") at the Hospital for evaluation and treatment on February 18, 2019. She alleges the Hospital charged her an undisclosed "ER Visitation Fee" ("the ER fee" or "the fee") in the amount of $3,922.68 in addition to the bill for services rendered during her ER visit in the

---

[1]  Plaintiff filed her original Class Action Complaint in the Fifth Judicial Circuit Court in Hernando County, Florida, on December 30, 2021. (Doc. 1-3). On February 8, 2022, Defendant CHS/CHSI removed the case to this Court based on its original jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as well as pursuant to federal-question jurisdiction, 28 U.S.C. § 1331. (Doc. 1).

amount of $3,620.96.[2] Plaintiff alleges that the ER fee is not charged for any specific service or treatment and is billed separately, and in addition to, charges for treatment and services actually rendered. She alleges the fee is concealed from all patients presenting for treatment at the Hospital's ER until after services have been rendered. The Hospital's standard ER "Consent for Service Agreement," ("the Contract") which is routinely provided to ER patients, and which contains a financial responsibility provision covering the payment of a patient's account, does not contain a specific contractual authorization or agreement for the ER patient to pay the subject ER fee.[3] Rather, the Contract states as follows:

> I [the Patient] understand I am responsible to pay any account balance not covered by my insurance company in accordance with the regular rates and terms of the Facility.

(Doc. 44-1, ¶ 2).

Plaintiff sues not only the Hospital but also CHS/CHSI and PSC, as alter egos (or affiliated companies) of the Hospital, who allegedly exercise control over the Hospital's pricing and billing. Plaintiff contends that Defendants have no legal

---

[2]  Plaintiff has not filed a copy of the bill in this case.

[3]  "A court's review at the motion to dismiss stage is generally limited to the four corners of the complaint with the only exception occurring when: (1) a plaintiff refers to a document in the complaint; (2) the document is central to its claim; (3) the document's contents are not in dispute; and (4) the defendant attached the document to its motion to dismiss." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999). Here, the Contract is central to Plaintiff's claim in Count III for breach of contract.

right to assess the ER fee if it is not included in the Contract. She alleges that the fee is also not described or mentioned on the Hospital's website or on any signage posted in the Hospital, and it is not a part of the ER registration process. Plaintiff also alleges the ER fee, if disclosed, would be a material factor in a patient's decision to proceed with treatment and care at the Hospital or to seek less costly treatment elsewhere. She maintains that had she known of the ER fee prior to being seen in the Hospital's ER, she would have left and sought less expensive treatment elsewhere or even self-treated.

Defendants assert that the ER fee is contained within the Hospital's "chargemaster," which is published on its website. The chargemaster, a large Excel spreadsheet containing the standard prices set by the Hospital for all of its services, can be accessed by visiting the Hospital's website, https://www.braverahealth.com, entering a search for pricing information, and then clicking on the link titled "Bravera Health Brooksville: DOWNLOAD CSV OF CHARGEMASTER" on the pricing information page.[4] Although the chargemaster is not easily understandable

---

[4]    At the motion to dismiss stage, [a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment, including the existence of a hospital's chargemaster. *Hauser v. Steward Melbourne Hosp., Inc.*, No. 6:19-cv-1150-Orl-41EJK, 2020 WL 917259, at *4 (M.D. Fla. Feb. 11, 2020) (citing *Universal Express, Inc. v. United States SEC*, 177 F. App'x 52, 53 (11th Cir. 2006). "To the extent that the website posting of the chargemaster showing the ER Facility Fees could not be gleaned directly from the allegations in the Complaint, the Court will take judicial notice . . . of the fact that the chargemaster is available on . . . Hospital's website." *Id.* The Court only takes notice of the fact

by laypersons due to its use of medical abbreviations for service descriptions, medical coding, and acronyms for medical billing terminology, Defendants point out that with respect to ER Visitation fees, the chargemaster discloses the following charges:

| Row | SVCCD | Description | CPT | Gross Charge |
|------|---------|-------------------------|--------|---------|
| 64 | 1913252 | TRIAGE ONLY | T5999 | $391 |
| 143 | 1913227 | CRIT CARE EA 30 MIN | 99292 | $1,476 |
| 163 | 1913226 | CRITICAL CARE LT 74M | 99291 | $6,424 |
| 197 | 1913225 | COMPREHENSIVE ED VST | 99285 | $5,716 |
| 318 | 1913224 | EXTENDED ED VISIT | 99284 | $4,401 |
| 357 | 1913223 | INTERMEDIATE ED VIST | 99283 | $3,105 |
| 1237 | 1913222 | LIMITED ED VISIT | 99282 | $2,080 |
| 1754 | 1913221 | BRIEF ED VISIT | 99281 | $1,116 |

(*See* Doc. 44, p. 4).

Plaintiff next alleges that sometime after she was discharged, she was given a discount on her bill from the Hospital, but that the Hospital sent her account to collections over the remaining amount owed. (Doc. 37, ¶ 28). She alleges that her non-payment of the subject ER fee has caused harm to her credit and that she is aggrieved because Defendants and their debt collectors continuously attempted to collect the debt from her. (*Id.*). Through her Complaint, Plaintiff seeks declaratory

that the chargemaster is posted on the Hospital's website and that the downloadable file can be searched (*i.e.*, is machine readable).

5

and injunctive relief, including a declaration that Plaintiff is not required to pay the subject fee, restitution, and the reduction of account balances attributable to the subject fee. (Doc. 37, ¶ 8).

On January 14, 2022, fifteen days after Plaintiff filed the original complaint in this action in state court, the Hospital discharged Plaintiff's debt and waived its right to pursue it, but Plaintiff contends that she has no guarantee this debt will not be sold to third party debt buyers or that Defendants will not choose to pursue the debt in the future. (*Id.*, ¶ 29). She also contends that she suffered emotional distress and incurred costs associated with the hiring of counsel to bring this litigation. (*Id.*).

Plaintiff brings this action on behalf of herself and a class of all other persons similarly situated beginning five years prior to the filing of her original complaint and continuing through the date the notice is issued to the class. She defines the proposed class as:

> All individuals or their responsible party who (1) were assessed an ER Visitation Fee by Defendants at any of its Florida locations; and (2) signed Defendant's form contract; and (3) who made any payment and/or have a remaining account balance for their visit.

(*Id.*, ¶ 30). She also lists in the Complaint the names of ten hospitals that are not named as parties to this lawsuit. (*Id.*, ¶ 14).

Defendants seek dismissal of the Complaint for lack of subject matter jurisdiction, pursuant Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff opposes.

## II.  STANDARDS FOR DISMISSAL

### A. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for lack of subject matter jurisdiction. When considering a 12(b)(1) challenge, a court is faced with either a facial attack or a factual attack. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint." *Id.* In other words, the allegations themselves reveal that subject matter jurisdiction is deficient. By contrast, factual attacks contest the truth of the allegations, which, by themselves, would be sufficient to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Morrison,* 323 F.3d at 925 n. 5 ("Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings."). In resolving a factual attack, a district court may consider evidence outside the pleading, such as testimony and affidavits. *Morrison*, 323 F.3d at 925 n. 5. Here, Defendants assert a factual attack

to Plaintiff's standing. As such, the Court will consider the Complaint as well as evidence both sides produced in deciding whether it has jurisdiction to hear this case.

## B. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court is required to view the complaint in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted).

Dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.* (citation omitted). The standard on a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail in her theories,

but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). To survive dismissal pursuant to Rule 12(b)(6), "the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level . . . ." *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007).

## III. DISCUSSION

### A. Plaintiff's Standing

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction on Article III standing grounds. In order to bring a case in federal court, a plaintiff must establish standing under Article III of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "To have standing under Article III, a litigant must have 'suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). "The doctrine of mootness

9

provides that the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *KH Outdoor, LLC v. Clay Cty.*, 482 F.3d 1299, 1302 (11th Cir. 2007)(internal citations omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

Defendants claim that the Complaint should be dismissed as moot because Plaintiff's hospital balance was discharged on January 14, 2022, thereby depriving her of any interest in this litigation. (Doc. 44, pp. 7–8). In support of their argument, Defendants attach the Declaration of Charles Hamilton, dated February 11, 2022, which provides that after this litigation was filed on January 14, 2022, Plaintiff's remaining balance was "written off" by the Hospital and it "waives any right to seek any amounts" related to Plaintiff's services rendered on February 18, 2019. (Doc. 44-2). Plaintiff responds that Defendants' argument overlooks the fact that she has styled this case as a class action and she seeks multiple types of relief, including declaratory and injunctive relief on behalf of thousands of class members. The Court observes that the Complaint alleges as follows: "Plaintiff and members of the Class are also entitled to equitable relief, including (1) restitution of those portions of the amounts which they have paid which are attributable to ER

10

Visitation Fees; and (2) the cessation of collection accounts for outstanding account balances which include all or part of an ER Visitation Fee." (Doc. 37, ¶ 60). Plaintiff also seeks the cessation of Defendants' billing of ER Visitation Fees which are not reasonably disclosed, and which are not agreed upon for payment. (Doc. 61, pp. 2–3).

Plaintiff points out that the January 14, 2022 "write-off" date is significant with respect the mootness issue, because this date was nearly three years after Plaintiff's ER visit on February 18, 2019—and fifteen days after Plaintiff filed the instant action on December 30, 2021. The Court agrees with Plaintiff that the date on which Plaintiff's bill was discharged is significant to the standing analysis. Defendants' discharge of Plaintiff's account balance after the litigation was filed does not moot Plaintiff's class claims for declaratory relief or injunctive relief, or the ability of Plaintiff to pursue class certification for such claims, particularly where Defendants do not assert they have changed their allegedly wrongful billing practices. "A defendant's voluntary cessation of challenged conduct moots a claim only if it is absolutely clear that the challenged conduct could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Evntl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000). The party asserting mootness bears the heavy burden of proof that plaintiff's claims are moot. *Id.* Here,

11

Defendants fail to meet their burden.[5] Plaintiff alleges that Defendants' challenged conduct is ongoing. Plaintiff also asserts that her Complaint is not moot as to putative class members who made one or more payments on their accounts and are entitled to seek restitution. Likewise, she asserts the Complaint is not moot as to putative class members who have a remaining outstanding account balance which is subject to pursuit in collections. This Court agrees with Plaintiff. For these reasons, the Complaint will not be dismissed for lack of subject matter jurisdiction on the basis that Plaintiff 's claims are moot.

However, Defendants next argue that Plaintiff has no standing to bring claims against entities with which she has no connection and who are not Defendants in this case. This Court agrees. Plaintiff brings this lawsuit on behalf of a putative class of individuals who were assessed an "ER Visitation Fee" at any hospital in Florida which is purportedly an indirect subsidiary of Community Health Systems, Inc. (Doc. 37, ¶ 30). To that end, Plaintiff lists the names of ten hospitals even though she has not added these entities as parties to this lawsuit.

---

[5] Defendants rely, in large part, on the cases *Oleary v. JCA Healthcare, Inc.*, No. 18-80647-CIV-ALTMAN/Brannon, 2020 WL 597361 (S.D Fla. Feb. 4 2020) and *De Leon v. Medical City Healthcare*, No. 3:19-CV-01574-X, 2021 WL 3130078 (N.D. Tex. July 23, 2011) in making their mootness argument. However, the two cases are readily distinguishable from the instant case. In both cases, the courts dismissed the plaintiff's claims because the debt was written off by the hospital prior to the filing of the lawsuit. Here, Defendants discharged Plaintiff's account balance fifteen days after the lawsuit was filed and after pursuing collections against Defendant for an extended period of time.

(*Id.*, ¶ 14). Plaintiff, however, lacks standing to seek relief against hospitals where she was never treated nor assessed an allegedly wrongful fee. To establish standing, a plaintiff must "allege[] such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Even in a class action, standing is a threshold issue that is appropriately addressed at the Rule 12 stage. *Sanchez-Knutson v. Ford Motor Co.*, No. 14–61344–CIV, 2015 WL 11197772, at *3 (S.D. Fla. July 22, 2015).

Where a plaintiff seeks to represent a class, the injury-in-fact requirement cannot be met merely by alleging that an injury has been suffered by other unidentified members of the putative class. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (concluding plaintiff must personally meet standing requirements regardless of injury to proposed class). Accordingly, the Eleventh Circuit requires that "at least one named class representative must establish Article III standing for each class subclaim." *Weiss v. Gen. Motors LLC*, No. 19–21552–CIV, 2019 WL 5394621, at **3–4 (S.D. Fla. Oct. 22, 2019). Here, Plaintiff's alleged injury is premised on a purported "ER Visitation Fee" assessed by the Hospital in connection with medical care received by Plaintiff on February 18, 2019, when she was a patient in the Hospital's ER. (See Doc. 37, ¶ 25). Therefore,

she lacks the "personal stake in the outcome" necessary to confer standing with respect to fees purportedly assessed by other hospitals, which are not defendants in the case. As such, Plaintiff's claims relating to hospitals other than the Hospital are dismissed for lack of subject matter jurisdiction.

## B. FDUTPA Claim

In Count I of the Complaint, Plaintiff asserts a cause of action pursuant to FDUTPA, which makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Defendants contend that Plaintiff's claim is precluded by federal law. Under FDUTPA, a Plaintiff must prove three elements to succeed on a claim for damages: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)). However, FDUTPA also contains a so-called "safe harbor" provision, whereby FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal law." Fla. Stat. § 501.212(1); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013). "The safe harbor provision applies to acts that are required or permitted not only by statutes but also by regulatory action." *Pye v. Fifth Generation, Inc.*, No. 4:14cv493-RH/CAS, 2015 WL 5634600, at *3 (N.D. Fla. Sep. 23, 2015) (citations

14

omitted). The purpose of the safe harbor provision "is obvious: it would be unacceptably inconsistent for one statute to penalize conduct mandated elsewhere." *Office of the Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1259 (Fla. Dist. Ct. App. 2007).

Here, Defendants assert that federal law requires hospitals to establish, update, and make public a list of the hospital's standard charges. Defendants contend that they have complied with this law and its implementing regulations, including the act of disclosing their ER Facility Fees on the internet in the required format. Therefore, Defendants argue, they fall within FDUTPA's safe harbor provision because their disclosure of the ER Facility Fee is an act or practice required by federal law. Plaintiff's counter argument, which is nearly devoid of citation to any relevant legal authority, essentially asserts that the disclosure required by federal law does not require enough of Defendants and that Defendants are in violation of FDUTPA for failing to do more than is required by federal law.

Federal law requires "[e]ach hospital operating within the United States" to annually "establish (and update) and make public (in accordance with guidelines developed by the Secretary a list of the hospital's standard charges for items and services provided by the hospital." 42 U.S.C. § 300gg-18(e). In 2014, the Centers for Medicare and Medicaid Services ("CMS"), an agency within the U.S.

15

Department of Health and Human Services, published a proposed rule and subsequently a final rule, providing guidelines for implementing § 300gg-18(e). 79 Fed. Reg. 27977, 28169 (May 15, 2014) (proposed rule); 79 Fed. Reg. 49853, 50146 (Aug. 22, 2014) (final rule). The guidelines require "that hospitals either make public a list of their standard charges (whether that be the chargemaster itself or in another form of their choice), or their policies for allowing the public to view a list of those charges in response to an inquiry." 79 Fed. Reg. at 50146. The rule also states that "hospitals are in the best position to determine the exact manner and method by which to make the list public in accordance with the guidelines," but posting the list on the internet "would be one approach that would satisfy the guidelines." *Id.* Thus, the rule does not dictate the particular form of the list of fees nor the specific method of disclosure but only establishment and making public of a method "for allowing the public to view a list of those charges." *Id.* This is the rule that was in place at the beginning of Plaintiff's proposed class period on May 1, 2017. (*See* Doc. 1-1 at 8).

On August 17, 2018, CMS updated these guidelines. *See* 83 Fed. Reg. 41144, 41686 (Dep't of Health and Human Servs., Centers for Medicare & Medicaid Servs., Aug. 17, 2018). In updating the guidelines, CMS expressly

referenced the pricing transparency issues that form the basis for Plaintiff's

Complaint:

> [W]e are concerned that challenges continue to exist for patients due to insufficient price transparency. Such challenges include . . . ***patients being surprised by facility fees and physician fees for emergency department visits***.

*Id.* at 41686 (emphasis added). To address its concerns, CMS updated the federal

regulations to require hospitals "to make available a list of their current standard

charges via the Internet in a machine-readable format and to update this

information at least annually, or more often as appropriate." *Id.* The information

may "be in the form of the chargemaster itself or another form of the hospital's

choice, as long as the information is in machine-readable format." *Id.*

      Here, the method of the Hospital's disclosure of the purported fees is

precisely what is at issue, and no dispute exists that the Hospital discloses these

fees on its website in a chargemaster, as expressly permitted by federal law.

Plaintiff contends that Defendants should also be required to disclose the same

information in an additional manner and by an additional method not required by

federal law. Federal regulations do not to require disclosure of the ER Visitation

Fees in patient consent forms, on signage in the emergency rooms or verbally

during a patient's registration process. CMS determined that the disclosure of such

charges on the Internet was sufficient. Because Plaintiff is seeking to impose

broader disclosure requirements than federal law requires, her FDUTPA claim fails

as a matter of law and is dismissed with prejudice. *Hauser v. Steward Melbourne

Hosp., Inc.*, 2020 WL 917259, at *5 (M.D. Fla. Feb. 11, 2020) (dismissing with

prejudice plaintiff's FDUTPA failure to disclose claim on grounds that the ER

Facility fee at issue was clearly regulated by federal law and FDUTPA's safe

harbor provision applied). "The dismissal is with prejudice because any further

attempts to amend a cause of action barred as a matter of law would be futile."

*Rance v. Winn*, 287 F. App'x. 840, 841 (11th Cir. 2008).

### C. Declaratory Judgment Claim

In Count II of her Complaint, Plaintiff asserts a claim under the federal

Declaratory Judgment Act, 28 U.S.C. § 2201. She seeks a declaration as to whether

or not Defendants have a duty to disclose to ER patients that they intend to charge

an ER fee over and above the costs of the medical services provided. (Doc. 36, ¶

58). Plaintiff also seeks a declaration that Defendants' practice of charging the fee

in addition to the charges for specific medical treatments and services rendered is

not authorized or agreed to under the Contract. (*Id.*, ¶59). As discussed above,

"[t]he federal courts are confined by Article III of the Constitution to adjudicating

only actual 'cases' and 'controversies.' " *Malowney v. Fed. Collection Deposit

Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (quoting *Allen v. Wright*, 468 U.S. 737,

750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). "[T]he Declaratory Judgment Act

. . . does not broaden federal jurisdiction." *Gulf States Paper Corp. v. Ingram*, 811

F.2d 1464, 1467 (11th Cir. 1987), *abrogated on other grounds*, *King v. St.*

*Vincent's Hosp.*, 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991).

Accordingly, if a declaratory judgment action fails to meet the Article III

case and controversy requirement, it must be dismissed for want of jurisdiction.

*See Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

Additionally, parties do not have a right to a declaratory judgment, and district

courts have the discretion to abstain from exercising jurisdiction over such a claim.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005)

(*per curiam*) ("The Declaratory Judgment Act is 'an enabling Act, which confers a

discretion on courts rather than an absolute right upon the litigant.' It only gives

the federal courts competence to make a declaration of rights; it does not impose a

duty to do so." (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct.

2137, 132 L.Ed.2d 214 (1995))).

Here, this Court has determined that Plaintiff's FDUTPA claim fails as a

matter of law. Plaintiff also asserts a claim that the Hospital has a duty to provide

reasonable notice of the subject ER fee pursuant to "well-established Florida

common law." (Doc. 37, ¶¶ 9, 36). However, she fails to plead a factual or legal

basis for this purported duty to disclose. (*See id.*, ¶¶ 57-64). She merely contends that a duty to disclose arises because of the relationship between Defendants and ER patients. However, a duty to disclose does not attach to an arm's length relationship, such as one between an ER patient and a hospital, especially where the underlying information is made accessible. *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, No. 06-21722-CIV, 2007 WL 9701121, at *4 (S.D. Fla. Mar. 11, 2007). ER patients do not have a longstanding relationship with a hospital, but instead seek one-time treatment for an emergency condition. *See, e.g., Kolari v. New York Presbyterian Hosp.*, 382 F. Supp. 2d 562, 579 (S.D.N.Y. 2005) (concluding that act of receiving and being charged for medical care does not create duty to disclose charging practices), *vacated in part on other grounds*, 455 F.3d 118 (2d Cir. 2006).

In light of the foregoing, Plaintiff's declaratory judgment claim does not allege any legal basis for the claim other than FDUTPA. As the FDUTPA claim fails as a matter of law, so too does the declaratory judgment claim. Therefore, the declaratory judgment claim in Count II is dismissed with prejudice for the same reasons the FDUTPA claim in Count I is dismissed with prejudice.

### D. Breach of Contract Claim

Finally, in Count III, Plaintiff alleges a claim for breach of contract against the Hospital. To prevail in an action for breach of contract, the plaintiff must prove

the following three elements: (1) the existence of a valid contract; (2) a material breach; (3) resulting damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached. *See, e.g., NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC*, No. 12-23930-CIV, 2014 WL 714812, at *4 (S.D. Fla. Feb.22, 2014) ("The Complaint must allege which provision of the contract has been breached."); *Cruz v. Underwriters at Lloyd's London*, No. 8:14-CV-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014) ("It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached."). Here, Plaintiff fails to identify a provision of the Contract that was breached by Defendants. (*See generally*, Doc. 37, pp. 32 –34). Instead, Plaintiff's argument for breach of contract appears to be that the Contract addresses "medical treatment" or "medical services," but the subject ER fee is not "medical" in nature and instead constitutes "general overhead, operational, and administrative expenses." (*See* Doc. 37, ¶ 66). She also asserts that Defendants' common practice of over-billing through these allegedly illegitimate charges constitutes an act inconsistent with the Contract terms. (*See id.*, ¶ 67). Thus, Plaintiff maintains that because the Hospital charged

administrative fees to her, doing so somehow constituted a breach of contract with the Hospital. She asserts a claim for damages in the form of cash payments/balances owed which are attributable to the ER fee, including the accumulation of debt for the fee. (*See id.*, ¶ 68). She adds that her account is subject to collection action, resulting in additional harm to her good credit. (*See id.*).

The Hospital argues that Plaintiff's claim must be dismissed for two reasons and this Court agrees. First, the Complaint does not state a plausible claim for breach of contract because it is based on the faulty premise that the subject ER fee is purely administrative. A review of the Hospital's chargemaster shows that each ER fee has a specific Current Procedural Terminology ("CPT") code associated with it. The CPT billing guidelines are published in the American Medical Association's CPT Manual. *See generally, Assocs. in Fam. Prac. of Broward, LLC v. Allstate Fire & Cas. Ins. Co.*, 322 So. 3d 1169, 1170 (Fla. Dist. Ct. App. 2021). And the exact CPT codes for the ER Visitation Fee at issue in this case have been held not to be administrative fees, but rather, "service" fees:

> [I]n 1992, the CPT established new codes for emergency medicine, known as evaluation and management services (E/M). The new codes defined five levels of services—99281–99285[6]—usually referred to as Levels 1 (lowest) through 5 (highest).

---

[6] The Hospital's chargemaster reflects that the "ER Visitation Fees" at issue in this case relate to these same CPT codes, 99281-99285. (*See supra*, p. 5).

*U.S. ex rel Trim v. McKean*, 31 F. Supp. 2d 1308, 1310–11 (W.D. Okla. 1998). Accordingly, Plaintiff's allegation that the subject ER fee is administrative is incorrect and, thus, fails to state a plausible claim for breach of contract.

Even assuming the subject ER fee was purely administrative, the Contract clearly and unambiguously states that Plaintiff is "responsible to pay *any account balance not covered by [her] insurance company* in accordance with the regular rates and terms of the Facility." (*See* Doc. 44-1, ¶ 2) (emphasis added). Administrative fees are not excluded. And nowhere in the Complaint does Plaintiff allege that the subject ER fee is not in accordance with the Hospital's "regular rates and terms." In fact, she alleges that fee is regularly assessed to patients who present to the Hospital's ER. (*See* Doc. 37, ¶ 23). Therefore, the Complaint's allegations contradict the claim that the Contract was breached. For these reasons, Plaintiff's cause of action against the Hospital for breach of contract, in Count III, is dismissed with prejudice. Plaintiff is proceeding on the third iteration of her Complaint and the Court finds that any repleader of her breach of contract claim would be futile due to the legal and factual inadequacies in the pleading.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

1. Defendant Hernando HMA, LLC's Motion to Dismiss (Doc. 44),

Defendant CHS/Community Health Systems, Inc's Motion to Dismiss (Doc. 46),

and Defendant CHSPC, LLC's Motion to Dismiss (Doc. 47) are **GRANTED**.

2. This case is **DISMISSED WITH PREJUDICE** as to Defendants

Hernando HMA, LLC,  CHS/Community Health Systems, Inc. and CHSPC, LLC.

**DONE AND ORDERED** at Tampa, Florida, this 16th day of September

2022.

SUSAN C. BUCKLEW
United States District Judge

24